UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-4538 (JMR/RLE)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. Steven P. Radjenovich,<br><br>Plaintiffs,<br><br>v.<br><br>STANLEY C. GALLAGHER, WHEATON COMMUNITY HOSPITAL, CITY OF WHEATON, MINNESOTA,<br><br>Defendants, | **UNITED STATES' COMPLAINT IN INTERVENTION** |

The United States of America, through the undersigned, for its complaint states:

### Jurisdiction And Venue

1. This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-33, and under common law theories of payment by mistake of fact, recoupment, and unjust enrichment. This court has jurisdiction over this action under 31 U.S.C. § 3730(a) and 28 U.S.C. §§ 1345 and 1367(a).

2. Venue is proper in the District of Minnesota, pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a).

### Parties

3. Defendant Stanley C. Gallagher ("Dr. Gallagher") is a licensed osteopath, authorized to practice medicine in the State of Minnesota. In connection with such practice, Gallagher is authorized pursuant to his provider agreement with the Centers

1

for Medicare and Medicaid Services ("CMS") to submit claims to CMS for services provided to his patients who are eligible and are enrolled in Medicare Part B.

4. Defendant Wheaton Community Hospital is wholly owned and operated by Defendant City of Wheaton, a municipal corporation of the State of Minnesota.

5. Relator Steven J. Radjenovich is an osteopath licensed to practice medicine in the State of Minnesota.

6. Plaintiff, the United States of America, acting through the Department of Health and Human Services (HHS), administers the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act (Act), 42 U.S.C. §§ 1395 et seq. ("Medicare"), which provides certain benefits to persons eligible for and enrolled in Parts A and B of Medicare.

**The Medicare Program**
**Part A**

7. In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare program, to pay for the costs of certain healthcare services. Entitlement to Medicare is based on age, disability or affliction with end-stage renal disease. See 42 U.S.C. §§ 426, 426A. Part A of the Medicare Program authorizes payment for institutional care, including hospital, skilled nursing facility and home health care. See 42 U.S.C. §§ 1395c-1395i-4.

8. HHS is responsible for the administration and supervision of the Medicare program. The Centers for Medicare and Medicaid Services (CMS) is an agency of HHS and is directly responsible for the administration of the Medicare program.

9. Effective January 1, 1983, hospitals are reimbursed by Medicare under the Prospective Payment System (PPS), which classifies patients according to diagnosis, type of treatment, age and other relevant criteria using the ICD-9-CM coding system.

10. Under PPS, hospitals normally receive a predefined payment for treating patients within a particular category or Diagnosis-Related Group (DRG) after submission of a claim form known as a "UB-92" to Medicare through a contractor known as a "Fiscal Intermediary" (typically an insurance company) who is responsible for processing and paying these and other claims under Part A of Medicare. 42 U.S.C. § 1395h; 42 C.F.R. §§ 413.1, 413.60, 413.64.

11. Prior to January 1, 1983, hospitals were reimbursed by Medicare using a retrospective payment system. Under that system, hospitals filed annual reports with Medicare detailing all costs associated with the treatment of their patients. The proportion of those costs devoted to the treatment of Medicare patients was calculated and paid on a periodic basis to the hospital during the current year. Payments during a

year were based on the prior year's costs (or on the basis of the most recent report of costs which had been reviewed and agreed to by Medicare and the hospital, a so-called "settled" cost report). Thus, the Part A payment system during this time was retrospective. Despite the conversion to the PPS system in 1984, hospitals using the PPS system are still required to file cost reports, but only for the purpose of providing cost information to CMS for the purpose of calculating costs associated with certain DRGs under the PPS system.

12. For all times relevant to this matter prior to July 1, 2000, Wheaton Community Hospital was reimbursed by means of PPS.

13. On and after July 1, 2000, Wheaton Community Hospital was designated a "Critical Access Hospital" or "CAH" and was reimbursed using a system different from PPS.

14. The reimbursement system for Critical Access Hospitals does not rely on DRG-determined payments, but rather is based on the cost of treating Medicare beneficiaries, calculated in a manner similar to that used to calculate reimbursement for hospitals prior to the adoption of PPS. Hospitals with a CAH designation receive 101% of the costs associated with treatment of Medicare beneficiaries.

15. For all times relevant to this matter, subsequent to July 1, 2000, Wheaton Community Hospital was a CAH.

**The False Claims**

16. Wheaton Community Hospital has 25 beds, and usually has 7-8 inpatients at once. Wheaton has a population of about 1,600 persons. During a portion of the claims period, Dr. Gallagher was the chair of the hospital board and chief of staff at Wheaton Community Hospital.

17. In September 2001, the City of Wheaton was planning a multi-million dollar addition to the hospital. Speaking to a public hearing related to the project, Dr. Gallagher declared that the addition "won't cost you a penny."

18. Dr. Gallagher admitted the majority of Wheaton Community Hospital's patients. While other doctors at Wheaton Community Hospital generated about $300,000 in billings for the hospital each year, Dr. Gallagher generated more than $4 million in billings in each of 2001, 2002, and 2003.

19. StratisHealth, the Quality Improvement Organization ("QIO") for the State of Minnesota under contract with the Centers for Medicare and Medicaid Services ("CMS") to review the quality of care given to Medicare beneficiaries, conducted a series of reviews of Dr. Gallagher's patients in 2003. StratisHealth found significant problems with the audited records, including a lack of documentation, a failure to provide proper care, and a lack of medical necessity. StratisHealth then notified Dr. Gallagher and Dawn Navratil, the QIO Liaison at Wheaton

Community Hospital, of its findings. James Talley, Chief Executive Officer and Administrator of Wheaton Community Hospital, was provided with these complaints. However, Wheaton Community Hospital took no action against Dr. Gallagher based upon these complaints.

20. Instead, the Mayor of the City of Wheaton, Janet Weick, asked StratisHealth to take no action to restrict Dr. Gallagher's practice because to do so would spell "financial disaster" for the City.

21. During and between October 1, 1998 and October 31, 2004 ("the Claims Period") Wheaton Community Hospital received millions of dollars in reimbursement from Medicare for the in-patient treatment of certain Medicare beneficiaries admitted to the Wheaton Community Hospital by Dr. Gallagher.

22. Certain of the claims for patients admitted by Dr. Gallagher during the claims period were false, in that the claims were made for in-patient care of Medicare beneficiaries which was not medically necessary.

23. Prior to filing this complaint, the Government caused a statistical sample to be designed. The purpose of the statistical sample was to determine whether Wheaton Community Hospital billed Federal healthcare programs for medically unnecessary hospital admissions.

24. The sample encompassed Wheaton Community Hospital's admissions

6

paid by the Government during the Claims Period.

25. The sample consisted of 170 randomly selected admissions over the Claims Period.

26. On or about December 15, 2006, the Government served a subpoena on Wheaton Community Hospital requiring production of the medical records supporting the 170 admissions described above. To protect the privacy of the patients, the examples set forth in this Complaint will refer only to the patient's sample number.

27. After Wheaton Community Hospital produced the records for the admissions, the records were reviewed by physicians and nurses experienced in the admission of patients to hospitals.

28. Based upon that review, a large number of Dr. Gallagher's admissions to the acute care at Wheaton Community Hospital were determined to be medically unnecessary. Other admissions, taking place after July 1, 2000, may have been medically necessary but were for an unnecessarily long period of time. Attached to this Complaint is a table of the medical review of Dr. Gallagher's admissions to Wheaton Community Hospital.[1] A summary of this review is attached as examples of false claims by means of Exhibit 1, attached hereto and made a part hereof by reference.

---

[1] Patient numbers, rather than names, have been used in this table. However, defendants have been served with a copy of this complaint containing complete patient names and identifiers.

29. For example, Patient 1091620, an 85-year-old man with a history of Parkinson's disease, was admitted for four days to acute care at Wheaton Community Hospital on February 12, 2001 with back pain, poor appetite, and general malaise. No back x-rays were taken, and the patient was given oral pain medication and physical therapy. No further study was undertaken to determine the cause of his back pain. The Government's experts reviewed the records and opined that the admission was not necessary because it appears the admission was social in nature and the treatments provided did not require an inpatient level of care.

30. Similarly, Patient 1091646, a 91-year-old man, with a history of back and sciatica problems, and who complained of back pain that radiated down his leg, was admitted for six days to acute care at Wheaton Community Hospital and treated with oral pain medication and physical therapy. Laboratory and radiographic studies did not show any cause of the back pain. The Government's experts reviewed the records and opined that the admission was not necessary because the treatments provided did not require an inpatient level of care.

31. Patient 1091712, a 96-year-old woman, with a history of peptic ulcer disease, past pelvic fracture, and arthritis, and who

fell at her nursing home, was admitted for seven days to acute care at Wheaton Community Hospital and treated with oral pain medication and physical therapy. Two separate pelvis x-rays showed no fractures. The Government's experts reviewed the records and opined that the admission was not necessary because the treatments provided did not require an inpatient level of care.

32. Wheaton Community Hospital submitted all claims during the Claims Period to Medicare, and was reimbursed for those claims as if the services provided were reimbursable.

33. Dr. Gallagher caused the claims during the Claims Period to be submitted by admitting the Medicare beneficiaries to the Wheaton Community Hospital.

34. Wheaton Community Hospital and Dr. Gallagher knew, as defined by the False Claims Act, that the claims described herein were false because they were not medically necessary based upon the magnitude of Dr. Gallagher's billing as compared to peer physicians, the necessity of raising enough money to pay for the hospital addition, the obvious nature of the lack of medical necessity, and the complaints by StratisHealth that were not acted upon by the hospital.

**COUNT I**
**(Presentation of False Claims)**
**(31 U.S.C. § 3729(a)(1))**

35. Plaintiff repeats and realleges each allegation in paragraphs

9

1 through 34, as if fully set forth herein.

36. During the Claims Period Wheaton Community Hospital and Dr. Gallagher knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

37. By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages in a sum to be determined at trial, against the Defendants, jointly and severally, under the False Claims Act plus a civil penalty of $5,500 to $11,000 for each violation against each defendant.

**COUNT II**
**(Making or Using**
**a False Record or Statement)**
**(31 U.S.C. § 3729(a)(2))**

38. Plaintiff repeats and realleges each allegation in paragraphs 1 through 34, as if fully set forth herein.

39. During the Claims Period Wheaton Community Hospital and Dr. Gallagher knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States.

40. By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages in a sum to be determined at trial, against the Defendants, jointly and severally, under the False

Claims Act plus a civil penalty of $5,500 to $11,000 for each violation against each defendant.

## COUNT III
### Reverse False Claims
### (31 U.S.C. § 3729(a)(7))

41. Plaintiff incorporates by reference herein the allegations made above in paragraphs 1 to 34, inclusive.
42. During the Claims Period the Defendants knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit property to the Government, those being, the cost reports.
43. By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages in a sum to be determined at trial, against the Defendants, jointly and severally, under the False Claims Act plus a civil penalty of $5,500 to $11,000 for each violation agains each defendant.

## COUNT IV
### (Unjust Enrichment)

44. Plaintiff repeats and realleges each allegation in paragraphs 1 through 34, as if fully set forth herein.
45. This is a claim for the recovery of money by which the Wheaton

Community Hospital has been unjustly enriched during the Claims Period.

46. By directly or indirectly obtaining government funds to which they were not entitled to during the Claims Period the Wheaton Community Hospital was unjustly enriched, and liable to account and pay such amounts which are to be determined at trial.

## COUNT V
### (Payment by Mistake)

47. Plaintiff repeats and realleges each allegation in paragraphs 1 through 34, as if fully set forth herein.

48. This is a claim for the recovery of money paid by the United States to the Wheaton Community Hospital during the Claims Period as a result of mistake and understandings of fact.

49. The payments made by the United States as a consequence of the claims which the Wheaton Community Hospital submitted to the United States during the Claims Period were based upon mistaken or erroneous understandings of material fact.

50. The United States, acting in reasonable reliance on the accuracy and truthfulness of the information contained in such claims, paid the Wheaton Community Hospital certain sums of money to which it was not entitled, and Wheaton Community Hospital is thus liable to account and pay such amounts to the United States, which sums are to be determined at trial.

## COUNT VI
### (Common Law Recoupment)

51. Plaintiff repeats and realleges each allegation in paragraphs 1 through 34, as if fully set forth herein.

52. This is a claim for Common Law Recoupment, for the recovery of money unlawfully paid by the United States to the Wheaton Community Hospital contrary to statute or regulation.

53. The United States as a consequence of claims made by the Wheaton Community Hospital during the Claims Period paid the Wheaton Community Hospital certain sums of money to which it was not entitled, and the Wheaton Community Hospital is thus liable under the Common Law of Recoupment to account and return such amounts which are to be determined at trial to the United States.

WHEREFORE, Plaintiff demands judgment against the Defendants as more particularly set forth in Counts I-V above, in an amount to be determined at trial, plus a penalty of $5,500.00 to $11,500.00 per false claim, plus interest, costs, disbursements and attorneys' fees as provided by law.

Dated: *September 5, 2007*

RACHEL K. PAULOSE
United States Attorney

*/s/ D. Gerald Wilhelm*

BY: D. GERALD WILHELM
Assistant U.S. Attorney
Attorney ID No. 117122

13